UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARY ROZZI CHURCH,

                              Plaintiff,

v.                                                   Case # 16-CV-6391-FPG

                                                        DECISION AND ORDER

FINANCIAL RECOVERY SERVICES, INC.,

                              Defendant.

## INTRODUCTION

Plaintiff Mary Rozzi Church brings this putative class action against Defendant Financial Recovery Services ("FRS") for an alleged violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p. Specifically, Plaintiff claims that Defendant violated § 1692e(10) of the FDCPA by sending a form collection letter that "use[d] . . . false representation or deceptive means to collect or attempt to collect [a] debt." *See* 15 U.S.C. § 1692e(10).

Plaintiff filed her Complaint on June 10, 2016, ECF No. 1, and Defendant answered on July 6, 2016, ECF No. 5. On September 28, 2016, Defendant moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. ECF No. 17. In the alternative, Defendant moved for summary judgment under Federal Rule of Civil Procedure 56(a). *Id.* On May 11, 2017, Plaintiff moved for class certification. ECF No. 35. Plaintiff then moved for summary judgment under Federal Rule of Civil Procedure 56(a) on May 30, 2017. ECF No. 41. In response, on June 26, 2017, Defendant filed a "Renewed Motion/Cross-Motion for Summary Judgment." ECF No. 46. For the reasons that follow, Defendant's Motion to Dismiss (ECF No. 17) is DENIED, Plaintiff's Motion for Summary Judgment (ECF No. 41) is DENIED,

1

Defendant's original Motion for Summary Judgment (ECF No. 17) is GRANTED, Defendant's Renewed Motion/Cross-Motion for Summary Judgment (ECF No. 46) is DENIED AS MOOT, and Plaintiff's Motion for Class Certification (ECF No. 35) is DENIED AS MOOT.

## BACKGROUND[1]

On or about July 13, 2015, Defendant sent Plaintiff a form collection letter, which she received shortly thereafter. The letter indicated that Plaintiff owed $2,170.50 and that Defendant was authorized to offer Plaintiff various "settlement opportunities." Accordingly, the letter set forth three offers to settle Plaintiff's debt for less than the full amount due. After detailing those offers, it stated:

> These settlement offers may have tax consequences. We recommend that you consult independent tax counsel of your own choosing if you desire advice about any tax consequences which may result from this settlement. FRS is not a law firm and will not initiate any legal proceedings or provide you with legal advice. The offers of settlement in this letter are merely offers to resolve your account for less than the balance due.

*E.g.*, ECF No. 41-2, at 1.

## LEGAL STANDARD

### I. Motion to Dismiss Under Rule 12(b)(1)

A Rule 12(b)(1) motion is the proper channel for dismissal "when the district court lacks the statutory or constitutional power to adjudicate" a matter. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to establish standing. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Where a defendant brings a facial Rule 12(b)(1) motion, "based solely on the allegations of the

---

[1] The following facts are drawn from the Local Rule 56(a) statements, affidavits, and documents submitted in connection with Defendant's Motion for Summary Judgment (ECF Nos. 17, 19), Plaintiff's response in opposition (ECF No. 22), Plaintiff's Motion for Summary Judgment (ECF No. 41), and Defendant's response in opposition (ECF Nos. 46–47). All facts are undisputed and match the facts alleged in Plaintiff's Complaint (ECF No. 1).

complaint or the complaint and exhibits attached to it," *id.*, a court must determine whether the complaint and any attached exhibits "allege facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue," *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). All facts are drawn "from the complaint and from the exhibits attached thereto" and "assume[d] to be true unless contradicted by more specific allegations or documentary evidence." *Id.* Issues raised in a Rule 12(b)(1) motion should be resolved first, since a court must confirm that it has subject-matter jurisdiction before proceeding to the merits of a claim. *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990); *SEC v. Rorech*, 673 F. Supp. 2d 217, 220–21 (S.D.N.Y. 2009).

## II. Motion for Summary Judgment

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must take genuinely disputed facts in the light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)). If, based on the admissible evidence, a reasonable jury could return a verdict in favor of the nonmoving party, summary judgment is not appropriate. *E.g.*, *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545–46 (2d Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). In deciding whether to grant summary judgment, the Court must resolve "all permissible inferences and credibility questions . . . in favor of the [nonmoving] party." *Id*. When considering cross-motions for summary judgment, the same analysis applies, and the Court examines each motion on its own merits. *See, e.g.*, *Specialty Nat'l Ins. Co. v. English Bros. Funeral Home*, 606 F. Supp. 2d 466, 470 (S.D.N.Y. 2009).

## DISCUSSION

### I. The FDCPA

The FDCPA seeks to, among other things, "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). At its core, "the FDCPA is 'primarily a consumer protection statute.' " *Avila v. Riexinger & Assocs.*, 817 F.3d 72, 75 (2d Cir. 2016) (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 95 (2d Cir. 2008)). Accordingly, its terms should be construed "in liberal fashion" to effectuate that "underlying [c]ongressional purpose." *Id.* (quoting *Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir. 2013)).

### II. Standing[2]

Article III of the U.S. Constitution limits the adjudicatory power of federal courts to "[c]ases" and "[c]ontroversies." U.S. Const. Art. III, § 2. Thus, from the outset, federal courts do not have subject-matter jurisdiction over cases in which plaintiffs lack the requisite standing to bring suit. *See, e.g.*, *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 735 (2d Cir. 2017). Constitutional standing requires that a plaintiff "have suffered (1) a concrete, particularized and actual or imminent injury-in-fact (2) that is traceable to [the] defendant's conduct and (3) likely to be redressed by a favorable decision." *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 96 (2d Cir. 2009); *see also Lujan*, 504 U.S. at 560 (describing an "injury in fact" as the "invasion of a legally protected interest"). A plaintiff invoking federal jurisdiction "must demonstrate standing for each claim and form of relief sought." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003)).

---

[2] In considering Defendant's facial Rule 12(b)(1) challenge, the Court has only considered the facts provided in Plaintiff's Complaint (ECF No. 1) and the attached exhibits (ECF Nos. 1-3, 1-4). *See, e.g.*, *Amidax*, 671 F.3d at 145. As noted *supra*, those facts match the facts provided in the Court's factual recitation.

Defendant relies on *Spokeo v. Robins*, 136 S. Ct. 1540 (2016), to argue that Plaintiff has not articulated the requisite injury-in-fact. *See* ECF No. 19, at 8–12. In *Spokeo*, the Supreme Court explained that a statutory violation alone does not necessarily create standing by the simple virtue of its occurrence. *See* 136 S. Ct. at 1549. An injury-in-fact requires concreteness—in that vein, the *Spokeo* Court reiterated that the violation of a procedural right "divorced from any concrete harm" would not satisfy constitutional standing requirements. *Id.* In disavowing the automatic assumption of Article III standing for bare statutory violations, the *Spokeo* Court still recognized that, in certain circumstances, "the violation of a procedural right granted by statute can be sufficient" for standing purposes. *Id.* ("In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified."). To assess that sufficiency post-*Spokeo*, the Second Circuit looks to whether "Congress conferred the procedural right to protect a plaintiff's concrete interests' as to the harm in question, and . . . [whether] 'the procedural violation presents a risk of real harm to that concrete interest.' " *E.g.*, *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016)).

By Defendant's account, "*Spokeo* recognized that a violation of the FDCPA alone does not automatically amount to an injury in fact." ECF No. 19, at 15. This suggestion appears to be rooted in the assumption that any violation of the FDCPA is, by definition, procedural. *See id.* at 14–15 ("In Spokeo, the Supreme Court emphasized that a plaintiff must show more than a statutory violation. . . . Plaintiff merely alleges that FRS committed a procedural violation, unconnected to any concrete harm."). To the extent that Defendant understands all bare statutory violations to be procedural, that is incorrect—there would be no logical reason to distinguish between "procedural" and "substantive" violations of a statute if "procedural" was simply synonymous for "statutory." Such a view ignores the longstanding recognition that an injury-in-fact "may exist solely by virtue

5

of 'statutes creating legal rights, the invasion of which creates standing.' " *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)) (discussing the substantive right "to truthful information concerning the availability of housing" that Congress established in the Fair Housing Act)). Indeed, *Spokeo*'s focus on the violation of procedural rights did not alter its express acknowledgement "that Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law.' " *See Spokeo*, 136 S. Ct. at 1549.

Regardless of whether § 1692e[3] creates a substantive or procedural right, Plaintiff has standing to sue for an alleged violation of its terms. *See Ceban v. Capital Mgmt. Servs., L.P.*, No. 17-CV-4554 (ARR) (CLP), 2018 WL 451637, at *4 (E.D.N.Y. Jan. 17, 2018). If § 1692e is understood to create a substantive right—the right to be free from "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt," 15 U.S.C. § 1692e—then a claimed violation alone would allege the infringement of that right, providing the requisite injury-in-fact. *See Bautz v. ARS Nat'l Servs., Inc.*, 226 F. Supp. 3d 131, 141, 144–45 (E.D.N.Y. 2016) ("[T]here is a meaningful difference between the direct violation of a specific statutory interest that Congress has recognized—for example, the right to truthful information in debt collection communications—and an ancillary procedural infraction that may or may not materially harm that interest."); *see also, e.g.*, *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994–95 (11th Cir. 2016) (per curiam); *Feldheim v. Fin. Recovery Servs., Inc.*, 257 F. Supp. 3d 361, 370–71 (S.D.N.Y. 2017); *Winehouse v. GC Servs. Ltd. P'ship*, No. 16-cv-03110-FB-RML, 2017 WL 2455075, at *2–3 (E.D.N.Y. June 6, 2017); *Taylor v. Fin. Recovery Servs., Inc.*, 252 F. Supp. 3d

---

[3] The specific provision cited by Plaintiff—§ 1692e(10)—is just one enumerated example from a nonexhaustive list of conduct that would violate the overarching prohibition of § 1692e. *See* 15 U.S.C. § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.").

6

344, 349 (S.D.N.Y. 2017); *Garcia v. Law Offices Howard Lee Schiff P.C.*, No. 3:16-cv-00791 VAB, 2017 WL 1230847, at *3–4 (D. Conn. Mar. 30, 2017); *Guerrero v. GC Servs. Ltd. P'ship*, No. CV 15-7449 (DRH) (AKT), 2017 WL 1133358, at *10 (E.D.N.Y. Mar. 23, 2017); *Remington v. Fin. Recovery Servs. Inc.*, No. 3:16-cv-865 (JAM), 2017 WL 1014994, at *2 (D. Conn. Mar. 15, 2017).

If § 1692e is understood to create a procedural right, then—under the Second Circuit's post-*Spokeo* rubric—the Court would need to determine whether "Congress conferred the procedural right to protect a plaintiff's concrete interests and [whether] the procedural violation presents a risk of real harm to that interest." *Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76, 80 (2d Cir. 2017) (quoting *Strubel*, 842 F.3d at 190). The Court has no trouble drawing that conclusion. The FDCPA was expressly created to protect consumers from abusive practices by debt collectors, and the use of "false, deceptive, or misleading representation[s] or means" to collect strikes at the core of that articulated congressional purpose. *See Papetti v. Does 1-25*, 691 F. App'x 24, 26 (2d Cir. 2017) (summary order) ("[T]here can be no dispute that Section[] 1692e of the FDCPA 'protect[s] an individual's concrete interests. . . . [T]he FDCPA violations alleged by [the plaintiff], taken as true, 'entail the concrete injury necessary for standing.' " (quoting *Strubel*, 842 F.3d at 189)); *Ceban*, 2018 WL 451637, at *4. Accordingly, under either interpretation of § 1692e, Plaintiff has sufficiently pleaded the injury-in-fact required for Article III standing. Defendant's Motion to Dismiss (ECF No. 17) is therefore DENIED.

## II. Summary Judgment

### 1. Procedural Considerations

Defendant initially moved for summary judgment as an alternative within its Motion to Dismiss. *See* ECF Nos. 17, 19. In so doing, Defendant neglected to comply with Local Rule

56(a)(1), which requires "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."[4] Moreover, while that motion was still pending, Defendant responded to Plaintiff's subsequent Motion for Summary Judgment (ECF No. 41) with a "Renewed Motion/Cross-Motion for Summary Judgment." *See* ECF No. 46. Defendant explained:

> FRS' initial motion for summary judgment was fully briefed on November 10, 2016, when Plaintiff filed her sur-reply. (Doc. No. 27). Since that time, FRS has filed three notices of supplemental authority. (Doc. Nos. 30, 32 and 39). While the core facts in support of FRS' motion remain the same, FRS submits this renewed motion/cross motion to fully set forth the arguments and supplemental authority. This memorandum therefore is FRS' opposition memorandum to Plaintiff's motion for summary judgment and is its initial memorandum with regard to its renewed motion/cross motion for summary judgment.

ECF No. 46-1, at 1 n.1.

As a general matter, "[n]o federal litigant has an absolute right to bring multiple, piecemeal motions for summary judgment." *Jackson v. Goord*, No. 06-CV-6172 CJS, 2013 WL 1560204, at *5 (W.D.N.Y. Apr. 10, 2013) (quoting *Essex Ins. Co. v. Foley*, 827 F. Supp. 2d 1326, 1329 n.2 (S.D. Ala. 2011)). Rather, "parties ought to be 'held to the requirement that they present their strongest case for summary judgment when the matter is first raised.' " *Siemens Westinghouse Power Corp. v. Dick Corp.*, 219 F.R.D. 552, 554 (S.D.N.Y. 2004) (quoting *Allstate Fin. Corp. v. Zimmerman*, 296 F.2d 797, 799 (5th Cir. 1961)). Courts do retain the "discretion to review a successive summary judgment motion seeking precisely the same relief as before." *Id.*; *see also Sira v. Morton*, 380 F.3d 57, 68 (2d Cir. 2004) ("[D]istrict courts enjoy considerable discretion in entertaining successive dispositive motions."). However, such discretion is generally limited to cases in which the movant provides new material—where the movant fails to provide "new facts or new law that could not have been raised in the first motion," a successive summary judgment

---

[4] At most, the body of Defendant's original motion includes a section entitled "Undisputed Facts." *See* ECF No. 19, at 9–10.

motion is typically deemed improper. *See Buehlman v. Ide Pontiac, Inc.*, 268 F. Supp. 3d 437, 444–45 (W.D.N.Y. 2017).

Here, Defendant concedes the lack of any new facts, but points to supplemental authority to support consideration of its Renewed Motion/Cross-Motion. The Court notes that, prior to filing that second summary judgment motion, Defendant had already attempted to bring the referenced cases to the Court's attention through its multiple "Notice[s] of Supplemental Authority."[5] *See* ECF Nos. 30, 32, 39. As a matter of procedure, the proper method for Defendant to seek review of new case law would have been for it to move for leave to file the supplemental authority. *See* Fed. R. Civ. P. 15(d). Nevertheless, the Court recognizes that additional case law has emerged since the filing of Defendant's original motion.

When Defendant filed its Renewed Motion/Cross-Motion for Summary Judgment (ECF No. 46), its original Motion for Summary Judgment (ECF No. 19) was still pending before this Court, as were its Notices of Supplemental Authority (ECF Nos. 30, 32, 39). Given Defendant's explanation that "the core facts in support of FRS' [original summary judgment] motion remain the same," and the second motion simply serves to "fully set forth the arguments and supplemental authority," ECF No. 46-1, at 1 n.1, the Court proceeds as follows: Defendant's original summary judgment motion (ECF No. 17) remains operative, and the Court takes notice of the supplemental authority filed by Defendant. As a result, the documents filed in response to Plaintiff's Motion for Summary Judgment constitute Defendant's brief in opposition, but they do not comprise a second, standalone motion for summary judgment.

---

[5] Additionally, since the filing of its Renewed Motion/Cross-Motion for Summary Judgment, Defendant has filed another Notice of Supplemental Authority. *See* ECF No. 48.

### 2. Substance of Motions

Plaintiff and Defendant have each moved for summary judgment. To prevail on her FDCPA claim, Plaintiff must demonstrate that (1) she is "a 'consumer' who allegedly owed the debt," or she is "a person who has been the object of efforts to collect a consumer debt"; (2) "the defendant collecting the debt . . . [is] considered a 'debt collector' "; and (3) "the defendant . . . engaged in an act or omission in violation of the FDCPA's requirements." *See Derosa v. CAC Fin. Corp.*, 278 F. Supp. 3d 555, 559–60 (E.D.N.Y. 2017). The instant dispute centers primarily on the third showing: the claimed violation of the FDCPA's requirements.[6] *See* ECF No. 46-1, at 7.

Section 1692e instructs that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statute's nonexhaustive list of examples includes "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* § 1692e(10). Plaintiff argues that the language in Defendant's letter falls within this description.

To determine whether an FDCPA violation has occurred, courts in the Second Circuit use the "least sophisticated consumer" standard. *Avila*, 817 F.3d at 75; *see also, e.g.*, *Taylor*, 252 F. Supp. 3d at 351 (noting that the standard requires "an objective inquiry," making it appropriate to apply as a matter of law at the summary judgment stage). Through that lens, courts assess "how the least sophisticated consumer[] . . . would understand" the communication at issue. *Avila*, 817 F.3d at 75. A collection letter "can be deceptive if [it is] open to more than one reasonable interpretation, at least one of which is inaccurate." *E.g.*, *Easterling v. Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)).

---

[6] Defendant also contests whether the debt is consumer in nature. *See* ECF No. 46-1, at 7. However, for the reasons discussed, the Court need not reach this issue.

While the "least sophisticated consumer . . . lacks the sophistication of the average consumer and may be naïve about the law," she is still "rational, and [she] possesses a rudimentary amount of information about the world." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017) (internal quotation marks omitted); *see also Ellis v. Solomon & Solomon P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (explaining that the "least sophisticated consumer . . . is neither irrational nor a dolt"). Moreover, the least sophisticated consumer is "willing[] to read a collection notice with some care." *See Ellis*, 591 F.3d at 135 (quoting *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005)) (citing the description approvingly); *see also, e.g.*, *Zirogiannis v. Seterus, Inc.*, 707 F. App'x 724, 728 (2d Cir. 2017) (summary order). In that sense, the standard "protects the naïve and the credulous," but also "carefully preserve[s] the concept of reasonableness"—it does not subject debt collectors to "liability for bizarre or idiosyncratic interpretations of collection notices." *Clomon*, 988 F.2d at 1319–20; *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 173 (2d Cir. 2015) (instructing that the standard should be applied to "protect[] debt collectors against liability for unreasonable misinterpretations of collection notices" (quoting *Easterling*, 692 F.3d at 233)); *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012) (summary order) ("[N]ot every technically false representation by a debt collector amounts to a violation of the FDCPA.").

A number of district courts have recently dealt with language nearly identical to that at issue here. *See, e.g.*, *Rhein v. Forster, Garbus & Garbus, LLP*, No. 16-8555 (ES) (JAD), 2017 WL 4969335, at *2–3, *2 n.5 (D.N.J. Nov. 1, 2017); *Smith v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 3:16-CV-1333-NJR-SCW, 2017 WL 2345600, at *1, *3–5 (S.D. Ill. May 30, 2017); *Taylor*, 252 F. Supp. 3d at 347, 352–53; *Dunbar v. Kohn Law Firm SC*, No. 17-CV-88, 2017 WL 1906748, at *1, *5–6 (E.D. Wis. May 8, 2017); *Remington*, 2017 WL 1014994, at *1, *3–4; *Everett v. Fin.*

*Recovery Servs., Inc.*, No. 1:16-cv-01806-JMS-MPB, 2016 WL 6948052, at *2, *5–6 (S.D. Ind. Nov. 28, 2016). In those cases, courts determined that the statement "this settlement may have tax consequences" did not violate § 1692e. *See Rhein*, 2017 WL 4969335, at *2–3; *Smith*, 2017 WL 2345600, at *1, *3–5; *Taylor*, 252 F. Supp. 3d at 347, 352–53; *Dunbar*, 2017 WL 1906748, at *1, *5–6; *Remington*, 2017 WL 1014994, at *1, *3–4; *Everett*, 2016 WL 6948052, at *2, *5–6.

The only difference between those statements and the instant language is Defendant's inclusion of the word "offers." *See* ECF No. 1-3, at 1 ("These settlement offers may have tax consequences."). Plaintiff attributes significance to this difference—she argues that Defendant's statement is false because "unaccepted settlement offers cannot possibly cause the consumer to incur any tax consequences." ECF No. 22, at 13. Notably, she does not afford the same significance to the language immediately following the sentence at issue, which reads: "We recommend that you consult independent tax counsel of your own choosing if you desire advice about any tax consequences which may result *from this settlement*. . . . The offers of settlement in this letter are merely offers to resolve your account for less than the balance due." ECF No. 1-3, at 1 (emphasis added). While Plaintiff acknowledges this supplementary explanation, she dismisses its effect by suggesting that, "[i]f anything, the second sentence makes the letter even more confounding." Specifically, she takes issue with the fact that, "instead of more accurately saying 'potential settlement,' Defendant refers to 'this settlement' as if Defendant had already reached a settlement agreement with the consumer." ECF No. 22, at 14. On its face, that interpretation simply ignores the rest of the paragraph, which expressly instructs that "[t]he offers of settlement in this letter *are*

*merely offers* to resolve your account for less than the balance due."[7] *See* ECF No. 1-3, at 1 (emphasis added). The Court declines to adopt such a divorce-and-construe approach.

Instead, the Court adheres to the reasonable interpretation suggested by Defendant: that the least sophisticated consumer would read the entirety of the paragraph and understand that consequences attach only once the offer has been accepted. From the outset, the Court does not understand the second sentence to be problematic, as Plaintiff would suggest. *See* ECF No. 1-3, at 1 ("We recommend that you consult independent tax counsel of your own choosing if you desire advice about any tax consequences which may result from this settlement."). Instead, the Court agrees with the district courts that found no violation in comparable tax-consequences language regarding settlements. It is entirely accurate to say that the settlement of a debt for less than its actual amount—the result of accepting one of Defendant's offers—could have tax consequences. *See* 28 U.S.C. § 61(a)(11) (instructing that "[i]ncome from discharge of indebtedness" can constitute gross income); *id.* § 63(a) (defining "taxable income" generally as "gross income minus [certain permissible] deductions").

In sum, the issue boils down to the effect of the term "offers." To be sure, its inclusion is—as Plaintiff suggests—likely the product of sloppy drafting. *See* ECF No. 22, at 13. But Plaintiff cannot attribute special significance to an extraneous term while simultaneously shielding the sentence from any supplementary explanation. Such a reading would result in the sort of hyper-technical and unreasonable interpretation that the least-sophisticated-consumer standard, while protective, cannot be stretched to permit. *See, e.g.*, *Clomon*, 988 F.2d at 1320 (noting "the dual purpose" of the standard in protecting both consumers and collectors). Rather, when read in full,

---

[7] On a larger scale, the argument creates something of a catch-22: in Plaintiff's words, Defendant should "more accurately" describe the offers as "potential settlements," but—under Plaintiff's construction—using that terminology to warn of possible tax consequences would result in a legally actionable falsity.

Defendant's collection letter would convey to even the least sophisticated consumer that potential tax consequences would only attach once an offer has been accepted. Therefore, as a matter of law, the language in Defendant's form collection letter does not violate § 1692e(10). Accordingly, Defendant's Motion for Summary Judgment (ECF No. 17) is GRANTED.

### III. Class Certification

Because the Court grants summary judgment for Defendant, it need not reach the issue of class certification. *See, e.g.*, *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 239 (2d Cir. 1998) ("The decision to award summary judgment before acting on class certification [is] well within the discretion of the district court . . . ."). Accordingly, the Court does not address the matter further, and Plaintiff's Motion for Class Certification is DENIED AS MOOT.

## CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss (ECF No. 17) is DENIED, Plaintiff's Motion for Summary Judgment (ECF No. 41) is DENIED, Defendant's original Motion for Summary Judgment (ECF No. 17) is GRANTED, Defendant's Renewed Motion/Cross-Motion for Summary Judgment (ECF No. 46) is DENIED AS MOOT, and Plaintiff's Motion for Class Certification (ECF No. 35) is DENIED AS MOOT. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: March 19, 2018
      Rochester, New York

                                            _____
                                            HON. FRANK P. GERACI, JR.
                                            Chief Judge
                                            United States District Court